**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED KEETOOWAH BAND OF<br>CHEROKEE INDIANS IN OKLAHOMA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-06-559-RAW |
| | ) | |
| THE UNITED STATES OF AMERICA, et al., | ) | |
| | ) | |
| Defendants. | | |

**MOTION TO TRANSFER and BRIEF IN SUPPORT**

Pursuant to this Court's Order dated March 3, 2008 and Federal Rule of Civil Procedure 28 U.S.C. § 1404(a), Plaintiff United Keetoowah Band of Cherokee Indians in Oklahoma (the "Keetoowah Cherokee") files this Motion to Transfer and requests that this case be transferred to the federal district for the District of Columbia.

**FACTUAL BACKGROUND**

The Keetoowah Cherokee filed this lawsuit on December 29, 2006, seeking declaratory and injunctive relief against the United States of America, which served as trustee (pursuant to applicable laws) for certain monies, lands and other assets belonging to the Keetoowah Cherokee, and against the Secretary of Interior and Secretary of the Treasury acting in their official capacities as trustee-delegates of the United States.  [Docket Entry No. 2].  On that same day, the Keetoowah Cherokee also filed a companion case for declaratory and injunctive relief in the United States Court of Federal Claims (CFC), United Keetoowah Band of Cherokee Indians v. United States, No. 06-cv-00936-TCW (Fed. Cl.).  The Keetoowah Cherokee makes allegations in both cases relating to the trust accounting and trust management duties and responsibilities allegedly owed by Defendants to the Keetoowah Cherokee.

3382235_1.DOC

Although on the Court's docket since late December 2006, this case has not rapidly progressed in this forum. Indeed, the parties have been engaged in settlement discussions and often have sought leave of this Court's scheduling order and other deadlines so that they could continue settlement discussions. See Docket Entry Nos. 12 (joint motion to stay), 14 (unopposed motion for extension of time), 22 (joint motion to administratively close case), 29 (joint motion to extend deadlines); 31 (joint motion for extension of time). To date, there have been no substantive motions filed or decided in this Court.

As of March 1, 2007, Defendants had calculated that there currently were nine Tribal trust cases pending before the United States District Courts in Oklahoma, 37 Tribal trust cases pending before the United States District Court for the District of Columbia, and 57 Tribal trust cases pending before the Court of Federal Claims. See Ex. 1 to Docket Entry No. 12. Today, there remain 37 Tribal trust cases pending before the United States District Court for the District of Columbia. See Exhibit 1 attached hereto. All of these cases are before Judge James Robertson, who as evidenced in Exhibit 1 in large part manages the 37 cases collectively for ease of judicial resources. Herein, the Keetoowah Cherokee seek that this case be transferred to the United States District Court for the District of Columbia so that it can be litigated before Judge James Robertson.

## ARGUMENT AND AUTHORITY

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). This venue transfer statute "is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Watkins v. Crescent Enter., LLC,* 314 F.Supp.2d

1156, 1161 (N.D. Okla. 2004). Its purpose is "to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Roc, Inc. v. Progress Drillers, Inc.,* 481 F. Supp. 147, 151 (W.D. Okla. 1979). The party seeking transfer must prove that the transfer is appropriate and that the balance of considerations tilts strongly in favor of transfer. *Scheidt v. Klein,* 956 F.2d 963, 965 (10th Cir. 1992). All of these elements are met in this action, supporting transfer of the case to the District of Columbia.

A.     **Transfer to the Federal District of the District of Columbia Is Permissible Because This Case Could Have Been Commenced There Originally.**

In deciding a motion to transfer, the court's initial concern is whether the action originally could have been commenced in the transferee district. *Roc,* 481 F. Supp. at 151; 28 U.S.C. § 1404(a). Here, the Keetoowah Cherokee could have commenced this action in the district court of the District of Columbia, as have numerous other Indian Tribes who assert claims similar to those advanced by the Keetoowah Cherokee in this lawsuit.

Although a plaintiff's choice of forum normally is accorded deference, where, as here, a plaintiff is the party seeking to transfer venue, the plaintiff's original forum choice is given less deference. As well, plaintiff here seeks transfer to the home venue of the Defendants and their counsel, all of whom are located within Washington, D.C. The Keetoowah Cherokee cannot simply dismiss this suit and refile in the District of Columbia, as the statute of limitations would preclude them from doing so. Thus, they seek a transfer.

B.     **The Balance of Convenience and Fairness Weighs Heavily in Favor of Transfer to the District of Columbia.**

After determining that the action originally could have been brought in the transferee district, the court must then consider: "(1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interest of justice." *Watkins,* 314 F. Supp.2d at 1161. Here, considerations of convenience dictate transfer to the District of Columbia.

3

The District of Columbia is convenient for Defendants, as Defendants currently are defending 37 similar Tribal trust cases in the District of Columbia, Defendants are all governmental entities located in the District of Columbia, and Defendants' counsel all hale from the District of Columbia.  Thus, Defendants cannot argue that the District of Columbia is inconvenient.

To the extent that witnesses are required at trial, the Keetoowah Cherokee are willing to have its witnesses travel from Oklahoma as necessary.  It is believed that the majority of witnesses called on behalf of the government will be located in and around the District of Columbia.  In the case that the Keetoowah Cherokee currently have pending before the Court of Federal Claims, the government has recently informed the Keetoowah Cherokee of approximately 19,900 documents relevant to the issues raised in that lawsuit as well as the issues raised in this lawsuit that the Keetoowah Cherokee understand are currently located in the District of Columbia.  To the extent, then, that the location of relevant documents bears on the convenience of the form, the vast majority of documents relevant to this dispute are in the District of Columbia.

The interests of justice dictate transfer to the District of Columbia where 37 similar cases are currently pending.  *See, e.g. A.J. Indus., Inc. v. U.S. Dist. Court,* 503 F.2d 384, 389 (9th Cir. 1974) (noting strong policy favoring litigation of related claims in same tribunal); *Schecher v. Purdue Pharma, L.P.,* 317 F.Supp.2d 1253, 1261-62 (D. Kan. 2004) ("The pendency of related litigation in another forum is a proper factor to consider in resolving choice of venue questions."); *Adair v. Hunt Int'l Res.*, 526 F. Supp. 736, 742 (D.C. Ill. 1981) (as a general proposition, cases should be transferred to district where related actions are pending); *Hall v. Kittay,* 396 F.Supp. 261, 264 (D. Del. 1975) (specter of inconsistent results on the merits

4

warrants transfer).  There is no reason for this Court to continue expending judicial resources on this matter, when the District of Columbia already is handling 37 of these cases and is able to do so in a manner that is somewhat consolidated.  See Ex. 1.

## CONCLUSION

For the convenience of the parties and witnesses, and in the interests of justice, the Keetoowah Cherokee respectfully requests that the Court transfer this action to the District of Columbia pursuant to 28 U.S.C. § 1404(a).

/s/ Tamara Schiffner Pullin
JAMES C. McMILLIN, OBA#17206
MICHAEL D. McCLINTOCK, OBA#18105
TAMARA S. PULLIN, OBA# 21462
McAfee & Taft
A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102-7103
Telephone:     (405) 235-9621
Facsimile:     (405) 235-0439

**Attorneys for Plaintiff**

3382235_1.DOC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on May 27, 2008, I electronically transmitted the foregoing document to the Clerk of the Court, using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

ANTHONY P. HOANG
anthony.hoang@usdoj.gov

JAMES M. UPTON
james.upton@usdoj.gov

MARTIN J. LaLONDE
martin.lalonde@usdoj.gov

Attorneys for Defendants


*/s/ Tamara Schiffner Pullin*
Tamara Schiffner Pullin

3382235_1.DOC

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**


| | | |
|---|---|---|
| Assiniboine & Sioux Tribes of the Fort Peck Indian Reservation v. Norton, et al. | : : : : | Civil Action No. 02-0035 (JR) |
| Standing Rock Sioux Tribe v. Norton, et al. | : : | Civil Action No. 02-0040 (JR) |
| Three Affiliated Tribes of the Fort Berthold Reservation v. Norton, et al. | : : : | Civil Action No. 02-0253 (JR) |
| Shoshone-Bannock Tribes of the Fort Hall Reservation v. Norton, et al. | : : : | Civil Action No. 02-0254 (JR) |
| Chippewa Cree Tribe of the Rocky Boy's Reservation v. Norton, et al. | : : : | Civil Action No. 02-0276 (JR) |
| Yankton Sioux Tribe v. Norton, et al. | : : | Civil Action No. 03-1603 (JR) |
| Osage Tribe of Indians of Oklahoma v. USA, et al. | : : | Civil Action No. 04-0283 (JR) |
| Crow Creek Sioux Tribe v. Kempthorne, et al. | : : | Civil Action No. 04-0900 (JR) |
| Omaha Tribe of Nebraska v. Kempthorne, et al. | : : | Civil Action No. 04-0901 (JR) |
| Oglala Sioux Tribe v. Kempthorne, et al. | : : | Civil Action No. 04-1126 (JR) |
| The Confederated Tribes of the Colville Reservation v. Norton, et al. | : : : | Civil Action No. 05-2471 (JR) |
| Wyandot Nation of Kansas v. Kempthorne, et al. | : : | Civil Action No. 05-2491 (JR) |
| Rosebud Sioux Tribe v. Kempthorne, et al. | : : | Civil Action No. 05-2492 (JR) |



| | | |
|---|---|---|
| Winnebago Tribe of Nebraska<br>v. Kempthorne, et al. | : <br>: | Civil Action No. 05-2493 (JR) |
| Lower Brule Sioux Tribe v.<br>Kempthorne, et al. | : <br>: | Civil Action No. 05-2495 (JR) |
| Prairie Band of Potawatomi<br>Nation v. Kempthorne, et al. | : <br>: | Civil Action No. 05-2496 (JR) |
| Te-Moak Tribe of Western<br>Shoshone Indians v.<br>Norton, et al. | : <br>: <br>: | Civil Action No. 05-2500 (JR) |
| Cheyenne River Sioux Tribe v.<br>Kempthorne, et al. | : <br>: | Civil Action No. 06-1897 (JR) |
| Stillaguamish Tribe of<br>Indians v. Kempthorne, et al. | : <br>: | Civil Action No. 06-1898 (JR) |
| Iowa Tribe of Kansas and<br>Nebraska v. Kempthorne, et al. | : <br>: | Civil Action No. 06-1899 (JR) |
| Confederated Tribes of the<br>Goshute Reservation v.<br>Kempthorne, et al. | : <br>: <br>: | Civil Action No. 06-1902 (JR) |
| Muskogee (Creek) Nation of<br>Oklahoma v. Kempthorne, et al. | : <br>: | Civil Action No. 06-2161 (JR) |
| Eastern Shawnee Tribe of<br>Oklahoma v. Kempthorne, et al. | : <br>: | Civil Action No. 06-2162 (JR) |
| Northwestern Band of Shoshone<br>v. Kempthorne, et al. | : <br>: | Civil Action No. 06-2163 (JR) |
| Red Cliff Bank of Lake<br>Superior Indians v.<br>Kempthorne, et al. | : <br>: <br>: | Civil Action No. 06-2164 (JR) |
| Pechanga Band of Luiseno<br>Mission Indians v.<br>Kempthorne, et al. | : <br>: <br>: | Civil Action No. 06-2206 (JR) |
| Colorado River Indian Tribes<br>v. Kempthorne, et al. | : <br>: | Civil Action No. 06-2212 (JR) |
| Tohono O'Odham Nation v.<br>Kempthorne, et al. | : <br>: | Civil Action No. 06-2236 (JR) |

Nez Perce Tribe, et al. v.          :
Kempthorne, et al.                  :     Civil Action No. 06-2239 (JR)


Passamaquoddy Tribe of              :
Maine v. Kempthorne, et al.         :     Civil Action No. 06-2240 (JR)


Salt River Pima-Maricopa            :
Indian Community v.                 :     Civil Action No. 06-2241 (JR)
Kempthorne, et al.                  :


Coer D'Alene Tribe v.               :
Kempthorne, et al.                  :     Civil Action No. 06-2242 (JR)


Ak-Chin Indian Community v.         :
Kempthorne, et al.                  :     Civil Action No. 06-2245 (JR)


Sokaogon Chippewa Community         :
v. Kempthorne, et al.               :     Civil Action No. 06-2247 (JR)


Gila River Indian Community         :
v. Kempthorne, et al.               :     Civil Action No. 06-2249 (JR)


Northern Cheyenne Tribe of          :
Indians v. Kempthorne, et al.       :     Civil Action No. 06-2250 (JR)


Haudenosaunee: The Onondaga         :
Nation v. Kempthorne, et al.        :     Civil Action No. 06-2254 (JR)


## MEMORANDUM ORDER

Defendants have moved for a six-month remand and stay
of litigation in each of the 37 tribal lawsuits pending before
me.  See, e.g., Tohono O'Odham Nation v. Kempthorne, 06-2236,
[Dkt. 17, 18].  The plaintiff tribes all oppose the motion.  The
motion is fully briefed.  No party has requested oral argument.
For the reasons set forth below, the motion will be **denied.**

- 3 -

**Background**

On December 14, 2006, 21 of these suits were transferred to me with the Individual Indian Money account lawsuit, Cobell v. Kempthorne, No. 96-1285. Sixteen additional, similar suits were filed immediately thereafter. In all 37 cases, tribal plaintiffs raise accounting and mismanagement claims regarding assets and funds held in trust by the United States. At the time they were transferred to me, many of the older cases were in active settlement discussions. All were moving along -- or not moving -- with relatively limited judicial involvement. See, e.g., Oct. 22, 2007 Supplemental Memorandum of Plaintiffs Assiniboine and Sioux Tribes of the Fort Peck Indian Reservation v. Norton, No. 02-0035, Standing Rock Sioux Tribe v. Norton, No. 02-0040, and Shoshone-Bannock Tribes of the Fort Hall Reservation v. Norton, No. 02-0454, at 11-12. At a June 6, 2007, status conference in the newer cases of Salt River Pima-Maricopa Indian Community v. Kempthorne, No. 06-2241, Ak-Chin Indian Community v. Kempthorne, No. 06-2245, Passamaquoddy Tribe of Maine v. Kempthorne, No. 06-2240, and Tohono O'Odham Nation v. Kempthorne, No. 06-2236, defendants requested a 60-day discovery stay within which to file a motion to remand those four cases. The government resisted my invitation to move for a remand in all the tribal cases, explaining that each case involves one or more unique sovereign-to-sovereign relationships, and that substantial

differences between the cases cautioned against a unified

approach.   After considering those arguments, I ordered that any

remand motion or motions the government wished to file would be

due by August 1, 2007, and that, in those cases in which no such

motion was filed, the government would be deemed to have waived

the issue.   Pursuant to Fed. R. Civ. P. 42(a), I consolidated the

cases for the limited purpose of resolving the remand motion.

The government then filed identical motions in all 37

tribal suits.   See, e.g., Motion to Remand And Stay Litigation,

Nez Perce Tribe, et al. v. Kempthorne, No. 06-2239 [Dkt. 37].   On

October 1, 2007, plaintiffs Ak-Chin Indian Community,

Passamquoddy Tribe of Maine, Salt River Pima-Maricopa Indian

Community, and Tohono O'Odham Nation filed a brief opposing the

remand motion.   See, e.g., Memorandum in opposition to Motion to

Remand and for Stay of Litigation, Ak-Chin Indian Community v.

Kempthorne, No. 06-2245 [Dkt. 22].   That brief was filed on

behalf of all the litigating tribes except the Osage Tribe of

Indians of Oklahoma and the Gila River Indian Community, who

(together) filed their own opposition brief.   See, e.g.,

Memorandum in opposition to Motion to Remand and for Stay of

Litigation, Osage Tribe of Indians of Oklahoma v. Kempthorne, No.

04-0283 [Dkt. 51].   On October 22, 2007, supplemental opposition

- 5 -

briefs[1] were filed by (1) Nez Perce Tribe, (2) Coeur d'Alene
Tribe and the Confederated Tribes of the Colville Reservation,
(3) Ak-Chin Community, and (4) Assiniboine & Sioux Tribes of the
Fort Peck Reservation, Shoshone-Bannock Tribes of the Fort Hall
Reservation, and Standing Rock Sioux Tribe.  The government filed
its reply on November 21, 2007.

### Discussion

A June 18, 2007, government memorandum requesting
limited consolidation for the remand motion it then expected to
file in the Tohono O'Odham, Salt River Pima-Maricopa, Ak-Chin,
and Passamaquoddy cases indicated that, if remand were granted,
the Interior department would "define and complete the accounting
for those Tribes as Interior deems required under its statutory
and regulatory mandates . . . [and that] [u]pon completion of
that remand, Defendants [would] present the accountings, along
with the supporting administrative records, to Plaintiffs for
their review."  See, e.g., Defendants' Bench Memorandum on Case
Management, Passamaquoddy Tribe of Maine v. Kempthorne, No. 06-
2240 [Dkt. 12] at 2.  That undertaking echoed the status report
filed in those four cases on May 4, 2007.

---

[1]    On August 23, 2007, I ordered the tribal plaintiffs to
file one or more principal briefs by October 1, 2007, and any
supplemental briefs by October 22, 2007.  See, e.g., Oglala Sioux
Tribe v. Kempthorne, No. 04-1126 [Dkt. 47].

The actual remand motion the government has now filed is not so optimistic.  Now, instead of defining, completing and presenting its accountings to plaintiff tribes, the government undertakes only to "prepare a historical accounting <u>plan</u> for all tribes (including those that have not brought suit)."  <u>See, e.g.</u>, Defendants' Reply in Support of its Motion for Remand, <u>Passamaquoddy Tribe of Maine v. Kempthorne</u>, No. 06-2240 [Dkt. 20] at 1 (emphasis added).  The motion will be denied, because (1) the tasks defendants seek to perform on remand can be undertaken without either a stay or a remand, (2) I am not persuaded that a remand will facilitate the resolution of these lawsuits, (3) the primary jurisdiction doctrine is inapplicable, and (4) a voluntary remand would be inappropriate.

Before discussing those reasons further, I should note that the use of the word "remand" in the context of these cases is imprecise and even misleading.  In its ordinary usage, a remand sends a case from one docket to another -- from a federal court back to a state court after an improper removal, from an appellate court back to a trial court after a reversal, or from a reviewing court back to an administrative agency for further proceedings.  It is the third of those examples that the government presumably invokes when it asks for a remand here, but the example does not fit.  These cases, like <u>Cobell</u>, sound in traditional equity as well as in administrative law -- the exact

relationship of one to the other yet to be determined.  I use the

word "remand" only because the parties do (and because, as noted

below, the Court of Appeals does).

        In his declaration supporting the remand motion,

Special Trustee Ross Swimmer identifies several factors the

agency will consider in developing its accounting plan.[2]  Nothing

is stopping the agency from considering those matters now,

however, or from moving forward with the development and

implementation of an accounting plan.  The agency's desire for

uninterrupted time to complete an accounting plan could not be

fulfilled by the granting of its motion in any event, as 65 other

tribal cases -- before 27 judges -- are pending in federal

district courts in Oklahoma and the Federal Court of Claims.

See, e.g., Memorandum in Support of Defendants' Motion for Remand

and Stay of Litigation, Tohono O'Odham Nation v. Kempthorne, 06-

2236 [Dkt. 18] at 19-20.

        This court cannot and will not dictate the details of

any tribal trust accounting plan.  However, it is the court's

---

        [2]    Plaintiffs object to the court's consideration of the
Swimmer declaration.  Their concerns stem from declarant's
description of agency actions from the 1990's of which the
declarant has, allegedly, no personal knowledge, as well as
certain discrepancies between the declarant's current and former
characterizations of Interior's capabilities in managing and
accounting for tribal trusts.  I find it unnecessary to reach
plaintiffs' objections, as I rely on the declaration only in so
far as it sheds light on the actions the department would take
and factors it would consider during a remand and stay.

obligation to define the trustee's legal duties and resolve the

various charges raised in plaintiffs' complaints.  I see no

reason to delay that process with a remand, the fruits of which

are unlikely to aid in the court's determination of such

threshold questions of duty and breach.  If, and when, the

defendants are found to be in breach of the fiduciary duties

identified in plaintiffs' complaints, it may be "proper . . . to

remand [sic] the case for further agency consideration in harmony

with the court's holding."  Cobell v. Norton, 240 F.3d 1081, 1109

(D.C. Cir. 2001).

     The doctrine of primary jurisdiction applies "when a

claim is originally cognizable in the courts, and comes into play

whenever enforcement of the claim requires the resolution of

issues which, under a regulatory scheme, have been placed within

the special competence of an administrative body."  Action for

Children's Television v. FCC, 59 F.3d 1249, 1257 (D.C. Cir.

1995), quoting United States v. Western Pacific Railroad Co., 352

U.S. 59, 63-64 (1956).  By contrast, resolution of claims raised

by plaintiff tribes requires analysis of trust and administrative

law principles "within the conventional competence" of the

district court.  Nader v. Allegheny Airlines, Inc., 426 U.S. 290,

305 (1976).  Consideration of the defendants' "fully-articulated

explanations of the features of an historic accounting for tribes

that it deems compliant with the law" may well be necessary in

ruling on summary judgment motions addressing the issues of duty
and breach, Swimmer Decl. ¶ 21, but there is no compelling reason
to postpone these cases for six months while the defendant
articulates its response to trust-related concerns the department
has been aware of for at least twenty years.  Such delay is
precisely why the doctrine of primary jurisdiction "should be
invoked sparingly."  Red Lake Band of Chippewa Indians v. Barlow,
846 F.2d 474, 476 (8th Cir. 1988).

The government argues in the alternative that the court
should grant the agency a voluntary remand.  Voluntary remands
are appropriate where an agency seeks to consider "intervening
events outside of the agency's control, [] reconsider its
previous position . . . [or where an agency] believes that its
original decision is incorrect on the merits and it wishes to
change the result."  SKF USA, Inc. v. United States, 254 F.3d
1022, 1028-29 (Fed. Cir. 2001).  Defendants submit that "'lessons
learned' from the current accounting work by OST . . . criticisms
of prior tribal accounting work, and [the need to] provide an
administrative record for the tribal accounting plan" constitute
intervening events that should be analyzed during a voluntary
remand.  Defendants' Reply Brief at 16.  These events do not
constitute "substantial and legitimate" grounds for a remand in
late 2007, however.  Criticisms of prior tribal accounting work
have been lodged against the agency for more than ten years.  See

May 1996 GAO Report.   OST accounting work has been underway since the Office's inception, and the obligation to create tribal accounting plans has been evident for years.   While the department may have properly focused much of its effort on settlement negotiations with tribes in recent years, nothing prevented the agency from at least planning its historical accounting activities concurrently with those negotiations, in accordance with statutory mandates.

Consideration of the remand issue itself has delayed the tribal lawsuits nearly six months.   Granting the remand would therefore result in the delay of an entire year.   Defendants argue that plaintiffs would not suffer prejudice "considering the early stage of litigation at which this motion is filed." Defendants' Motion for a Remand and Stay at 33.   Though some of these cases were filed in the waning days of 2006, others were filed in 2002, and the department has been on notice of these concerns for decades.   In view of that history, a six-month delay at this juncture would be inappropriate.

It is accordingly **ORDERED** that the government's remand and stay motion is **denied**.   It is

**FURTHER ORDERED** that the temporary stay of litigation granted on July 2, 2007 is lifted.   And it is

**FURTHER ORDERED** that each plaintiff tribe, group of tribes, or putative class of tribes file a status report (only in

- 11 -

the appropriate individual case or cases) within 30 days of the

date of this order, setting forth proposals for further

proceedings and a proposed schedule.




                                JAMES ROBERTSON
                          United States District Judge